## LIEBMAN *v.* CITY AND COUNTY OF SAN FRANCISCO.

*(Circuit Court, D. California.* August 24, 1885.)

1. STATUTES OF STATE — CONSTRUCTION BY STATE COURTS, HOW FOLLOWED BY FEDERAL COURTS.

    In construing state statutes the United States courts will follow the construction adopted by the state courts, unless it conflicts with or impairs the efficiency of some principle of the United States constitution, an act of congress, or a rule of commercial or general law.

2. MUNICIPAL BONDS—SAN FRANCISCO — MONTGOMERY AVENUE OPENING—PETITION OF PROPERTY OWNERS—RECITALS IN BONDS.

    The petition of property owners was essential to the validity of the proceedings to open Montgomery avenue, in San Francisco, under the act of April 1, 1872; and to maintain an action on the bonds issued, the sufficiency of the petition must be affirmatively shown, as it cannot be conclusively presumed from the recitals in the bonds.

3. SAME—BONDS ISSUED BY CORPORATION COMPOSED OF CITY OFFICERS ACTING UNDER SPECIAL STATUTE—LIABILITY OF MUNICIPALITY.

    The city and county of San Francisco is not bound by recitals contained in the Montgomery avenue bonds issued by the board of public works under the act of April 1, 1872, such board of public works being a distinct corporation composed of officers of the city, acting independently of it, under the provisions of a special statute.

4. SAME — RIGHT OF PARTY LIABLE ON BOND TO HEARING BEFORE JUDGMENT.

    A party liable on a bond is entitled to his day in court, in person, or by his representative, before a binding judgment, determining the validity of the bond as against him or his property, can be rendered.

5. SAME—MONTGOMERY AVENUE BONDS NOT CITY OR COUNTY BONDS.

    The Montgomery avenue bonds are not bonds of the city or county of San Francisco, and the city and county cannot be sued thereon.

At Law.

*D. M. Delmas, A. L. Rhodes,* and *J. P. Hoge,* for plaintiff.

*Garber, Thornton & Bishop,* for defendant.

Before FIELD, circuit justice, and SAWYER, circuit judge.

FIELD, Justice. This is an action against the city and county of San Francisco to compel the payment of 20 coupons for interest, each amounting to $30, attached to certain instruments designated in the pleadings as "Montgomery Avenue Bonds." The plaintiff prays for judgment; that the coupons are valid obligations of the city and county; that there is due by it, upon each of them, the sum of $30, with interest from the date of its maturity at the rate of 7 per cent. per annum; that the city and county pay the amount thus adjudged due from the special tax to be annually levied, assessed, and collected for that purpose, pursuant to the act of the legislature of April 1, 1872; and that the plaintiff recover against it for the costs of this action.

The validity of the bonds to which the coupons are attached, and, of course, the validity of the coupons also, depends upon that act, and the compliance in their issue with its requirements. The object of the act was to open and establish a public street in the city and county of San Francisco, to be called Montgomery avenue, and to take private lands therefor. It described a strip of land by metes and bounds,

and declared that it was taken and dedicated for such street; and that, when paid for, the title thereto should vest in the city and county for that purpose, as 'the title of other public streets was vested. It provided that the value of the property taken, the damages to improvements thereon, or adjacent thereto, and all other expenses incidental to the proceeding, should be considered the cost of the opening of the avenue, and should be assessed upon lands within a described district in proportion to the benefits accruing therefrom, to be ascertained by a board of public works created for that purpose. That board was to consist of the mayor, the tax collector, and the surveyor of the city and county of San Francisco; and whenever the owners of a majority in frontage of the property which was to bear the burden of the improvement, as they were named in the last preceding annual assessment roll for the state, city, and county taxes, should petition the mayor of the city and county, in writing, for the opening of the avenue according to the provisions of the act, the board was to proceed to organize by the election of a president, and then to the performance of its prescribed duties. It was, among other things, to ascertain and report the cash value of the land taken and the damages caused to the property along the line and within the course of the avenue; also, the benefits accruing from its opening to the lots within the prescribed district.

The report was to remain at the office of the board for 30 days for the inspection of parties interested, and notice that it was thus open for inspection was to be published for 20 days in two daily papers in the city and county. Any person interested who was aggrieved by the action of the board, *as shown in its report,* might, within the 30 days, apply, by petition to the county court setting forth his interest in the proceedings, and his objections thereto, for an order on the board to file with the court its report, with such other documents or *data* as might be pertinent thereto, which were used by it in preparing the report. And the court was authorized to hear the petition, and the board could appear in response to it, and testimony could be taken in the matter. After hearing and consideration, it was in the discretion of the court to approve and confirm the report, or to refer it back to the board, with directions to alter or modify it in specified particulars. From the order of the county court an appeal could be taken to the supreme court of the state, to review the matters complained of. Upon the final confirmation of the report the board was required to prepare and issue bonds in sums of not less than $1,000 each, for the amount necessary to pay and discharge all the damages, costs, and expenses incurred. The bonds were to be known and designated as the "Montgomery Avenue Bonds," and made payable in 30 years from their date, and to bear interest at the rate of 6 per cent. per annum, payable semi-annually at the office of the treasurer of the city and county. Coupons for the interest were to be attached to each bond. The bonds were to be signed by all the members of the board,

and its seal was to be affixed to each. The coupons were to be signed by the president.

Any person to whom damages for lands were awarded, upon tendering to the board a satisfactory deed of conveyance of the property to the city and county, was entitled to have bonds issued to him equal to the amount awarded. The act also provided for the assessment and levy of an annual tax upon the property benefited for the payment of interest upon the bonds, and to create a sinking fund for the redemption of the principal, the assessment to be "adjusted and distributed according to the enhanced values" of the respective parcels of land as fixed in the final report of the board. But the act declared that the *city and county of San Francisco should not, in any event whatever, be liable for the payment of the bonds, nor any part thereof, and that any person purchasing them, or otherwise becoming the owner of any bond or bonds, accepted the same upon that express stipulation and understanding.* The following is a copy of one of the bonds and coupons issued under the act. The others are similar in form, differing from each other only in their number.

STATE OF CALIFORNIA.

*Board of Public Works.*

City and County (Number 205) San Francisco.

(Vignette.)

$1,000.        MONTGOMERY AVENUE BOND.        $1,000.

In Conformity

with an act passed by the people of the state of California, represented in senate and assembly, entitled "An act to open and establish a public street in the city and county of San Francisco, to be called Montgomery avenue, and to take private lands therefor," approved April 1, 1879, the treasurer of the city and county of San Francisco, state of California, will pay, at his office in said city and county, to the holder hereof, one thousand dollars in United States gold coin, with interest at the rate of six per cent. per annum, payable semiannually in like gold coin, upon surrender of the corresponding coupons, and that the principal sum is redeemable within thirty years from the date of these presents.

It being understood and agreed that this bond may be redeemed by said treasurer as provided in said above-mentioned act of the legislature of the state of California.

In witness whereof, the mayor, the tax collector, and city and county surveyor of said city and county of San Francisco, composing a board of public works, have respectively signed these presents, and the president of the board of public works has signed the annexed coupons as of the first day of January, 1873.

{ Seal of the Board of Public Works. }

WILLIAM ALVORD,

President of the Board of Public Works and Mayor of the City and County of San Francisco.

ALEXANDER AUSTIN,

Tax Collector and Member of said Board of Public Works.

RICHARD H. STRETCH,

City and County Surveyor and Member of said Board of Public Works.

$30.                         *Board of Public Works.*                    Coupon No. 15.

Montgomery ⎫  The treasurer of the city and county of San Francisco will
  M. A. B.  ⎬  pay bearer, at his office, thirty dollars, six months' inter-
  Av. Bond. ⎭  est.

On bond ⎱                                                 ⎰ Due 1st January,
No. 205. ⎰                                                 ⎱        1881.

                                                 WM. ALVORD,
                                President of Board of Public Works.

From this brief statement of the act of April 1, 1872, three things
distinctly appear: (1) That the petition of the owners of a majority
in frontage of the property to be charged with the cost of the improve-
ment was essential to the validity of all subsequent proceedings taken
for the opening of the avenue, including, of course, the issue of the
bonds; (2) that in no event could the city and county be held liable
on the bonds, and necessarily, therefore, not on the coupons attached;
and (3) that every person purchasing or becoming the owner of any
bond took the same on that express stipulation and understanding.

The act in question was before the supreme court of the state, and
the subject of exhaustive consideration, in *Mulligan* v. *Smith,* 59 Cal.
206. That was an action of ejectment to recover land claimed by
the plaintiff under a deed executed to him upon a sale of the prem-
ises for the non-payment of a taxed levied thereon to raise a fund to
pay the interest on the bonds. In the lower court, evidence was in-
troduced which tended to show that the petition to the mayor, which
was the essential initiatory step to the proceedings for opening the ave-
nue, had not been signed by the owners of a majority in frontage of the
property to be charged, as shown by the names on the assessment
roll of the previous year; and the court found that such was the fact.
In the supreme court it was contended, as it had been in the court
below, that evidence to impeach the correctness of the petition in this
respect was inadmissible; and also that as the petition was suffi-
cient on its face, and had been accepted by the mayor as sufficient,
the defendant was estopped from questioning its validity, or the va-
lidity of the proceedings under it; and also that such estoppel fol-
lowed from the judgment of the county court confirming the report
of the board. But the supreme court held the evidence admissible,
and that the defendant was not estopped from showing the insuffi-
ciency of the petition, either by the action of the mayor in accepting
it, or the judgment of the county court; that while it might be true
that the mayor was called upon in the first instance to decide upon
the sufficiency of the petition, there was nothing in the statute which
made his determination conclusive, and precluded an inquiry into its
validity whenever the proceedings under it came up for judicial con-
sideration. In no part of the statute, said the court, did it appear
that provision was made for notice to the property owners of the pro-
ceedings authorized to be taken before the mayor, or by the board,
or in the county court. Neither the mayor nor the board was re-

quired to give notice of any kind until the board had completed the report of its work. And the notice then required was one of a general nature, by publication, and was only that the report was open for inspection. Though any property owner aggrieved by the action or determination of the board, as shown in its report, could have made his objections to the county court, they could not extend to the character or sufficiency of the petition. "Nowhere in the statute," said the court, "is the petition made part of the report, or of the *data* or documents used in making it. Nor is it anywhere required that the board or the mayor shall return it to the court, or file it there or elsewhere. The court had, therefore, no jurisdiction of the petition; no power to adjudge upon its execution; and it could not assume jurisdiction of it, or by its judgment decide upon its sufficiency and validity so as to conclude the defendant." These conclusions of the court were concurred in by all its members, and sustained in separate opinions of marked ability and learning by three of them. All agreed that evidence to show the defect in the petition, in not being signed by owners of a majority in frontage of the property to be charged, was admissible, and that the defect existing invalidated all the subsequent proceedings. "When, therefore," said the court, "the legislature prescribed that a petition from the owners of a majority in frontage of the property to be charged with the cost of the improvement was necessary to set the machinery of the statute in motion, no step could be taken under the provisions of the statute until the requisite petition was presented. It was the first authorized movement to be made in the opening of the avenue. When taken, officers who were to constitute and organize a board of public works were authorized to organize. Until it was taken, they had no such authority. They could not legally act at all; or, if they acted, their proceedings would be unauthorized and void. The presentation of the petition required by the statute was therefore essential."

The authorities cited in the several opinions show that similar conclusions have been reached by the highest courts of other states, in analogous cases. Indeed, the rule is fundamental that where private property is to be taken for a public improvement, upon the petition of a majority of those who are to bear its burden, the petition of such a majority must be made before proceedings for the appropriation of the property can be had. This is a condition which must be strictly followed. A failure to comply with it will vitiate all subsequent proceedings. No one, indeed, would contend that proceedings had in such cases, without the petition of any of the owners, would be valid; and a petition of a less number of the owners than that designated by the statute would be equally ineffectual. If one less than the required number may be omitted, so may all. Nor is the rule at all affected by the doctrine that in a certain class of cases evidence of such compliance is conclusively found in the action of officers required to consider and determine that fact. That doctrine, as we shall pres-

ently see, only applies to estop the obligors of a bond, and can have no bearing or consideration in the present case, where the bonds to which the coupons in controversy are attached are neither in form nor in law the obligations of the city and county.

The construction given by the supreme court of the state to the act of April 1, 1872, if not absolutely binding upon the judges of the federal courts, in cases arising under it, is certainly not to be disregarded and rejected, except for the most cogent and persuasive reasons, such as would leave little doubt of the error of the state court. Conflicts between state and federal tribunals, in the interpretation of state statutes, are always to be avoided if possible. The federal courts will therefore follow the exposition of the state courts, unless it conflicts with or impairs the efficiency of some principle of the federal constitution, or of a federal statute, or a rule of commercial or general law. In this case there is no such conflict or impairment. No principle of federal law is invaded, or rule of commercial or general law disregarded. The construction given is one we should unhesitatingly adopt, had the supreme court, the legitimate expounder of state statutes, never spoken on the subject.

There was, it is true, an intimation by one of the judges, in his opinion in *Mulligan* v. *Smith*, that in an action upon the bonds, that being an action upon contract, a different rule might exist, and that an estoppel might arise against the defendant. It was, however, only an intimation to mark a possible distinction in the proofs required in the two forms of action. No question as to the effect of the bonds as evidence was before the court. And it is plain that if, to recover in the ejectment, it was essential to establish the validity of the proceedings leading to the levy of the tax to pay the interest on the bonds, it must be essential to establish the validity of the proceedings leading to the issue of the bonds themselves, and, of course, the sufficiency of the petition upon which the proceedings were founded, unless such sufficiency is, from the character of the instruments, and the recitals in them, to be conclusively presumed. In the ejectment case, a comparison of the petition with the assessment roll of the previous year disclosed the fact that a number less than the majority of the owners in frontage, as shown by the names on the assessment roll, appeared on the petition. The subsequent proceedings were therefore from this defect, wholly unauthorized. The essential initiative to them had never been taken.

The question here is whether, assuming that an action will lie against the city and county on the coupons, will the sufficiency of the petition be presumed; or, what will amount to the same thing, will the defendant be estopped from denying its sufficiency, so as to allow the admission in evidence of the coupons, without other proof than the production of the bonds to which they were attached?

There are numerous cases where municipal bonds have been authorized by statute, upon a vote of a majority of the citizens of a city,

county, town, or other locality, and officers designated to ascertain and report as to the vote taken, and issue the bonds. When, in such cases, the bonds refer to the statute, and recite a compliance with its provisions, and have passed, for a valid consideration, into the hands of *bona fide* purchasers, without notice of any defect in the proceedings, the obligors have been held to be estopped from denying the correctness of the recitals. The doctrine on this subject is well stated by the supreme court of the United States in the recent case of *Pana* v. *Bowler,* 107 U. S. 539; S. C. 2 Sup. Ct. Rep. 713. "This court," is the language used, "has again and again decided that if a municipal body has lawful power to issue bonds, or other negotiable securities, dependent only upon the adoption of certain preliminary proceedings, such as a popular election of the constituent body, the holder in good faith has the right to assume that such preliminary proceedings have taken place, if the fact be certified on the face of the bonds by the authorities whose primary duty it is to ascertain it." This doctrine is not accepted in many of the state courts, and has, in some instances, met with earnest dissent from judges of the supreme court. It must, however, be conceded that it is the settled doctrine of that court; but to its application the recitals must clearly import a compliance with the statute under which the bonds were issued. If, fairly construed, they are consistent with any other interpretation, they will not estop the municipal corporation in whose name they are made from showing that they were issued without authority of law. *School-district* v. *Stone,* 106 U. S. 186; S. C. 1 Sup. Ct. Rep. 84; *Supervisors Carroll Co.* v. *Smith,* 111 U. S. 556; S. C. 4 Sup. Ct. Rep. 539. And the recitals, when full, will estop only the obligors of the bonds; they cannot estop others who are not parties to them; they cannot affect strangers to the transaction. In both particulars the alleged recitals in the avenue bonds are inoperative to create any estoppel against the city and county. There is no statement of any fact in the clause called a recital. The clause is a mere caption to an order or promise of the board of public works that the treasurer of the city and county of San Francisco will pay to the holder the sum of one thousand dollars. "In conformity with the act," the title of which is given, says the instrument, "the treasurer will pay." Read in connection with what follows, it imports that the treasurer will pay the amount designated in accordance with the act,—that is, out of the fund to be provided by it,—and that the holder can look to no other source of payment. There is nothing in the clause which would reach the petition, and import that it had conformed to the requirements of the statute. But the fact which disposes of this question of recitals, and any alleged effect attributed to them in the present case, is that the so-called bonds to which the coupons in controversy were attached are not obligations of the city and county. They are not executed by it, or under its seal, or by its agents or officers, but by certain parties constituting

the board of public works. The fact that certain officers of the city and county are made members of the board to appraise the property taken, and the injuries and benefits caused by the opening of the avenue, and to issue the bonds, does not constitute them agents of the city and county, and render their work as such board, or the bonds issued by them, the work or the bonds of the city and county; no more than if they were constituted a board to establish a university, and prescribe the studies to be pursued in it, would make them the agents of the municipality for that purpose. Agents can only exercise the powers of their principals; they cannot lawfully exceed them. Here the city and county, as a municipality, is not authorized to open the avenue, to appraise the value of the property taken, or the amount of injuries received by or benefits conferred upon the owners of property along the line of the avenue, or to sign and issue its bonds to the parties injured. In all these matters the board acts independently of the municipality. It is made the agent of the state to carry out a public improvement directed by its statute, and not the agent of the city and county. This branch of the case is more fully considered by my associate, and I fully concur in his views.

The foundation upon which the doctrine of estoppel from recitals in municipal bonds rests is that the officers signing the bonds and inserting the recitals are agents of the municipality, and authorized to bind it by their acts and representations. The principle which gives rise to the estoppel, as well stated by the defendant's counsel, is that it would be inequitable to permit a municipal corporation to take advantage of the falsity of solemn declarations of such agents within the scope of their authority. But if the officers making the recitals are not such agents, there is no room for the doctrine of estoppel. Their recitals, on no conceivable principle, can in such cases bind the corporation. It follows that if any action can be maintained upon the coupons against any defendant, the validity of the proceedings upon which the bonds were issued must be established by affirmative proof of the sufficiency of the petition, which was the essential initiative to them. But the question is not before us, whether an action can be maintained against any other party; it is enough that we are of opinion that the present action cannot be maintained against the city and county of San Francisco. The plaintiff asks for judgment that the coupons are valid obligations of the city and county; that there is due, by the city and county, upon each of the coupons, $30, with interest; that the city and county pay the amount thus adjudged due, out of the special tax to be levied under the act, and that the plaintiff recover his costs of the action. Such judgment could not be rendered upon the facts stated in the complaint. The statute to which the complaint refers, and upon which alone the judgment is sought, declares, in express terms, "that the city and county shall not, in any event whatever, be liable for the payment of

the bonds, nor any part thereof," and "that any person purchasing said bonds, or otherwise becoming the owner of any bond or bonds, accepts the same on that express stipulation and understanding."

As already stated, the so-called bonds, which, in fact, are only orders or promises of the board of public works that the treasurer will pay to the holder the amounts designated, cannot be the foundation of any liability of the city and county; and that such liability is sought to be charged appears from the prayer for judgment, although the discharge of that liability is to be had out of funds to be raised by the special tax for which the act provided.

The asserted ground of the action is that it is essential to establish the validity of the bonds, as a preliminary to an application for a *mandamus* to levy the special tax. Counsel assume that the validity of the bonds issued by one party can be determined in an action against another in no way named in them, nor liable for their payment. We do not so understand the law. We have not met with any adjudged case to that purport. On the contrary, we have always supposed that the party actually liable on a bond must have his day in court, in person, or by his representative, before a judgment determining its validity as against him or his estate could be regarded as having any binding force. Such liability cannot be vicariously imputed to him, or charged upon his estate. If the action be to charge particular property, of which there is no representative, there is a defect in the law, which the legislature, and not the courts, must supply.

It is true that in the enforcement of bonds of municipal bodies, which are to be paid from funds raised by taxation, general or special, the validity of the bonds must first be established by the judgment of the court,—that is, the demand against the municipality on the bonds must be first carried into judgment; then a *mandamus* will issue, which is in the nature of an execution. It is the executory process for the enforcement of the judgment recovered. It can only issue to command the corporation against which the judgment is rendered, or its representatives or officers, to levy the tax prayed, just as an execution on an ordinary money judgment can only be issued against the property of the judgment debtor. Whether, when the judgment against the municipality is rendered, the writ is to direct a general or special tax upon all or a portion of the property within its limits, or only upon a particular class of property, real or personal, will depend upon the directions of the statute providing for the payment of the indebtedness created. The judgment, however, must, in all cases, be against the corporation to which, or to whose representatives or officers, the writ is directed. It is the liability of the corporation established by the judgment which is to be discharged by the levy of the tax prayed, and not the liability of any other body.

The several cases cited by counsel in support of their contention in no respect militate against these views, but, on the contrary, illus-

·trate and confirm them. In all of them the bonds were issued in the name, or were in law the obligations, of the municipality against which the judgment was prayed, though in some of them the funds for the payment of the judgment were to be collected by a special tax upon the property of a particular district. It would serve no useful purpose to comment at length upon the cases in verification of this statement. Every one who may take an interest in the subject will find, upon examination of them, its correctness sustained.

One of the counsel of the plaintiff indulges in his brief in some strictures upon the action of the city and county of San Francisco, with respect to these bonds, characterizing it as "dishonest and dishonorable repudiation." The accusation falls harmless in the face of the statute under which the bonds were issued, declaring that the city and county "*shall not, in any event whatever, be liable for the payment of the bonds, nor any part thereof,*" and "that any person purchasing said bonds, or otherwise becoming the owner of any bond or bonds, accepts the same upon *this express stipulation and understanding.*" Nor can the legislators of the city and county be subjected to any just imputation of a want of regard to the honor and credit of the municipality in refusing to order the levy of a tax to pay the interest on the bonds, so long as the judgment of the highest tribunal of the state, the constitutional expounder of its laws, remains unreversed, declaring that the proceedings on which the bonds were issued, were taken in disregard of the conditions imposed by the legislature, and therefore were absolutely null and void. If property of citizens has been taken and is retained for an avenue of the city without compensation, upon proceedings not warranted by law, some other remedy must be sought by the parties injured than such as consists in affirming the validity of those proceedings in face of the judgment of that tribunal.

It follows from the views expressed that no recovery can be had upon the facts disclosed in the complaint, and the motion of the defendant to exclude all evidence in support of its allegations must be granted; and it is so ordered.

SAWYER, J., (*concurring.*) This case having been regularly called for trial, the plaintiff offered in evidence the bonds and coupons set out in the complaint, to the introduction of which the defendant objected, on the ground that the complaint does not state a case sufficient to justify the introduction of any evidence whatever; or, in other words, that the facts stated in the complaint do not make a case which entitles the complainant to any judgment or relief against the defendant, or upon which the defendant is in any respect liable to be sued. The counsel of both parties treated the objection as, in effect, a demurrer to the complaint, on the ground that the facts set out, taken as true, do not constitute a cause of action, and they argued the question very elaborately on that hypothesis.

The first question that meets us at the threshold of the discussion is whether the defendant—the municipal corporation, the city and county of San Francisco—is, in any sense, the obligor on the bonds, or whatever the instruments in suit may be properly termed, or whether it is in any way a party to the transaction out of which these instruments arose, in such sense as to cast any liability or duty upon the municipality in its corporate capacity.

In my judgment the instruments sued on are not bonds of the city and county of San Francisco, and the city and county of San Francisco, in its corporate capacity, does not stand in any such relation to these obligations as renders the corporation liable to be sued upon them for any purpose. The act under which the instruments sued on purport to have been issued is not an amendment of the city charter, and it does not purport to enlarge the powers or duties of the corporation, or of its officers, in their capacity as officers or agents of the corporation. It does not confer any authority whatever upon the corporation to do any act in its corporate capacity, or impose any duty or obligation upon the municipality relating to the opening and dedication to public use of Montgomery avenue. The corporation is not authorized to do the acts necessary to the opening and dedication of the street to the public use contemplated by the act, or required to see that the costs of the work, upon completion, shall be collected or paid; in short, the corporation, as such, is neither required nor authorized to perform any act in relation to the opening and dedication of the avenue, or in relation to payment therefor, when accomplished. Clearly, it seems to me, the state has undertaken to do this work through the instrumentalities chosen by itself, of which instrumentalities the corporation called the city and county of San Francisco is not one. Some of the officers of the city, it is true, are designated as instrumentalities for carrying out the scheme provided for; but, in carrying it out, they do not act by virtue of any authority derived under the charter of the corporation, or any act amendatory of the charter, or enlarging its powers, or under the authority of the corporation, but they act solely by authority of the act in question, independently of any act of the corporation; their designation by their official titles being only *descriptio personarum*, to indicate the particular parties chosen for the work.

The act describes a specific tract of territory, within the city and county of San Francisco, by metes and bounds, and then declares that "it is hereby taken and dedicated for an open and public street, and, *when paid for as hereinafter provided*, the title thereto shall vest in the said city and county for such purposes forever, as the title of other public streets in said city and county now is vested." This, with a provision for subsequent improvement and care, is the only one in the whole act in which the city and county, in its corporate capacity, is brought into any relations with the improvement contemplated; and this relation only commences after the work of dedication and open-

ing is fully completed *and paid for* by the agencies, and in the manner appointed by the act. The expenses of dedication to public use, and opening the avenue, are to be paid for by assessments on a *district* of land specifically described and designated by the act as benefited by the improvement. The board of public works provided for is not a board of public works *of the city and county of San Francisco,* with powers derived under the charter of the city, or any act enlarging those powers, or acting by authority of the corporation or its charter. It is not one of the branches of the municipal government. This board is a special board of public works created by the statute, without any reference to the powers and duties of the corporation to carry out this particular improvement undertaken by the state, without reference to or any action of the corporation, and without consulting its pleasure. It is, it is true, composed of three persons, who are also officers of the corporation, and their official name is used to designate the individuals who are to constitute the board. But their individual names might just as well have been used, or any other three persons, having no connection with the corporate government, might have been appointed to perform precisely the same acts; and had this been done, there would be just as good ground for considering them agents of the corporation, and not instrumentalities employed by the state itself to carry out its purposes, as there is now to consider the board as an agent of the municipality, and not an instrumentality of the state. Doubtless, the legislature might have enlarged the powers of the corporation, or conferred the authority or imposed the duty upon it to perform the contemplated work, but it did not see fit to do so. "The mayor, tax collector, and city and county surveyor" of the city and county of San Francisco,—that is to say, the persons who, for the time being, fill those offices,—are "created a board of public works within the meaning and intent of this act, and, as such board, are hereby authorized, empowered, and directed to perform all and singular the duties herein enjoined upon the board of public works as herein provided." A salary of $2,000 per annum is allowed to each for his services in such board, payable out of the "Montgomery avenue fund," to be assessed upon the property benefited as a part of the expenses of opening the avenue. Section 25 provides that "the board of public works shall provide itself with an *official seal,* which shall be used to verify such acts of the board as are herein described to be done under the seal of the board;" thus, apparently, making it an independent corporation, or *quasi* corporation, for the purposes of the act. Section 8 requires the board, at the proper stage of proceedings, to prepare and issue bonds for an amount in the aggregate "necessary to pay and discharge all said damages, costs, and expenses;" "said bonds shall be known and designated as 'Montgomery Avenue Bonds,' and the bonds shall be signed by all the members 'of the board,' and the seal thereof shall be affixed to each bond." There is nothing to authorize the issue of bonds by or in the name

of the municipal corporation. They are to be issued by the board specially created for the purpose, under its own seal, provided for by the act, and not under the seal of the municipal corporation, and not signed by the mayor as mayor or agent of the city. Under section 11 a fund sufficient for the purpose for payment of the coupons and redemption of the bonds is to be levied, assessed, and collected "in the same manner as other taxes in said city and county are levied, assessed, and collected upon lands within the district supposed and determined by the act itself to be benefited. Thus the same machinery and instrumentalities used for collecting *other state* as well as city taxes are adopted for assessing and collecting the special tax provided for the purposes of the act. The moneys so collected are to be paid, not into the *treasury* of the city and county, as a part of its corporate funds, but to the *treasurer* of the city and county, personally designated for the purpose, and is "to constitute the Montgomery avenue fund," "to be paid out by said *treasurer only* in payment of the coupons attached to said bonds, * * *" and "in redeeming the bonds issued in pursuance of the provisions of this act."

The fund thus provided is set apart for this specific purpose, having no connection with the funds of the municipality under the sole charge and management of the board of public works, and the person who happens, for the time being, to be treasurer. The municipal corporation, as such, has no power or authority over it,—nothing whatever to do with it. Nor has the board of supervisors, the legislative and governing body of the corporation. It is under the exclusive authority and control of the agents of the state, especially designated by the act to carry out the will and purpose of the state, as manifested by the act.

As if not enough to declare its purpose to make the improvement, to designate its own instrumentalities, and point out the mode of executing its will, leaving nothing to be done on the part of the corporation, or of its legislative and governing body, and to carefully avoid bringing the corporation or its legislative body into any relations whatever with the work, and as if to cut off all possibility of doubt upon the subject, it was expressly provided, in the last section but one of the act, "that the city and county of San Francisco *shall not, in any event whatever, be liable for the payment of the bonds, nor any part thereof, provided to be issued under this act;* and *any person* purchasing said bonds, or otherwise becoming the owner of any bond or bonds, *accepts the same upon that express stipulation and understanding.*" Thus the statute in no provision authorizes the city and county of San Francisco, in its corporate capacity, or by the board of supervisors, its legislative and controlling body, or otherwise, to do anything in the matter of opening and dedicating to public use Montgomery avenue, or to meddle with the funds provided for the purpose, or to assume any obligation or responsibility in the matter. The act imposes no obligation or duty upon the corporation or upon its con-

trolling body, nor does it even confer any power to act in any man-
ner in regard to the work of opening Montgomery avenue, while, on
the contrary, it expressly provides that it "*shall not, in any event what-
ever, be liable for the payment of the bonds, nor any part thereof, pro-
vided to be issued under this act.*"

The act does not authorize the issue of any bonds of the corpora-
tion, and the board of public works must have so understood the stat-
ute, for it did not, in fact, issue any such bonds.    The instruments
set out in the complaint, neither in substance, in form, nor in law,
can be regarded as bonds of the city and county of San Francisco.
They do not purport upon their face to be such, and there was no au-
thority in the board to make them such.    The only provisions in the
whole act which bring the municipal corporation, in its corporate ca-
pacity, into any relations with the opening of the avenue are the pro-
visions in sections 1 and 16 relating to its diposition after the work is
both done and paid for, as provided in the act,—after the will of the
state has been carried out, and the purpose of the act fully accom-
plished.    The provision of section 1 is that the land described, "taken
and dedicated for an open public street," "*when paid for, as herein-
after provided,* the title hereto shall vest in said city and county for
such purposes forever, as the title of other public streets in said city
and county is vested."    Thus, after opening and dedicating the ave-
nue to public use, and *paying for it* in the manner provided, which
was the task assumed to be performed by the state, the street is do-
nated to the city; and until all this is fully accomplished, the city, in
its corporate capacity, has nothing at all to do with the matter.  And
then, as a consideration for opening and dedicating the land for the
avenue, procuring and vesting the title in the city and county, section
16 imposes an obligation on the corporation to, *thereafter,* sewer, grade,
sidewalk, plank or pave the avenue, as in the case of other streets
already dedicated to public use.    The provision is:

"The said Montgomery avenue, *when opened,* shall be sewered, graded,
sidewalked, and planked and paved by the municipal authorities in accord-
ance with the rules, regulations, statutes, and ordinances applicable to the
other public streets of the city and county of San Francisco."

Thus the state assumes the duty and work of dedicating and open-
ing Montgomery avenue, and providing for payment by a fund as-
sessed upon the property determined by itself to be specially benefited
by the improvement, and, when its task is fully accomplished, turns
the avenue over to the municipal corporation, to be thereafter im-
proved, under its direction and authority, in the same manner as other
public streets are improved, in pursuance of the powers conferred on
it by its charter.    And, until the avenue was thus opened and turned
over to the municipality, the city and county, through its legislative
controlling body or otherwise, had no corporate control over or rela-
tion to the matter, and had nothing to do with it.

These bonds were issued in connection with that portion of the

work assumed by and carried on exclusively by the state, and under its direction, and with which the corporation had no concern. The board of public works, and other parties designated by the Montgomery avenue act to perform the duties therein indicated, performed such duties solely by authority of that act. The duties were not performed by virtue of any authority of the municipal charter, or of any other act conferring power or authority upon the municipal corporation. The consent of the corporation was in no way obtained or asked. The acts were solely performed in pursuance of the express, direct command of the statute itself, wholly irrespective of the will or the charter powers of the corporation. They were not performed in the exercise of corporate powers, and they were in no sense corporate acts. The authorities are numerous establishing the proposition that parties so acting by express direction of the statute, without the authority of the municipal corporation, and not acting by virtue of the powers conferred on the corporation by its charter, do not act as officers or agents of the corporation, and the corporation not being the principal, their acts are not the acts of the corporation,—they are but the agencies employed by the directing power for the accomplishment of its own purposes.

The following are some of the authorities establishing this self-evident proposition, and it will be sufficient to cite the cases, without analyzing or commenting upon them in detail: *Sheboygan Co.* v. *Parker,* 3 Wall. 96; *Horton* v. *Town of Thompson,* 71 N. Y. 521; *Board Park Com'rs* v. *Detroit,* 28 Mich. 244, 245; *People* v. *Chicago,* 51 Ill. 17; *Hoagland* v. *Sacramento,* 52 Cal. 149; *Tone* v. *Mayor,* 70 N. Y. 165; *New York & B. S. M. & L. Co.* v. *Brooklyn,* 71 N. Y. 584. In *Horton* v. *Town of Thompson, supra,* the court said:

"In the present case no action on the part of the town in its corporate capacity, or on the part of any of its officers, was required by the act, or was taken. The money was to be borrowed, and the bonds issued by commissioners to be appointed in *the manner prescribed by the law. These commissioners were in no sense town officers, nor did they represent the town.*" Page 521.

The strongest case cited in opposition to the views expressed, and to support the position that the opening of Montgomery avenue was a municipal and not a state undertaking, for which the municipal corporation is liable, is that of *Sage* v. *City of Brooklyn,* 89 N. Y. 189. But there were several clauses in the statute involved in that case, upon which the court relied and rested its decision, that are wholly wanting in the Montgomery avenue case. "Thus," says the chief justice, who delivered the opinion of the *majority* of the court, "by the third section it is declared that the lands ' *shall be deemed* to have been *taken by the city of Brooklyn* for public use.' " Id. 197. "That the improvement of Sackett street was regarded *by the legislature of the state as a city* and *not a state improvement,* also *plainly appears* from the supplementary act, chapter 592, Laws 1873. The park commissioners were, by that act, authorized and directed to improve Sackett

street by grading, paving, planting shade-trees, constructing carriage-ways, etc., and *by the fourth section the city was required to issue its bonds* for the purpose of raising money to pay the expenses of the improvement, and the money collected on assessments was directed to be paid to the commissioners of the sinking fund *for the redemption of the bonds."* Id. 198. Thus, by the express terms of the statute, the land was *"deemed to be taken by the city,"* and the *city* was expressly made *primarily liable,* and *required to issue its own bonds,* and reimburse itself from assessments on the property benefited. There is nothing of this kind in the Montgomery avenue act, and nothing even looking ·in that direction. So, also, referring to section 16 of another act as applicable, the chief justice says: "The direction in section 16, that the comptroller shall pay the land damages, is *absolute and unqualified. It is not a direction to pay them out of the assessments when collected, or out of any particular fund."* Id. 199. Again: "The city, under that statute, [Supplemental Act 1873,] was required, *primarily,* to *advance the necessary funds.* The provision in the act of 1873 furnishes a strong inference in favor of the claim that the legislature, by incorporating section 16 of the charter into the act of· 1868, *intended to impose upon the city the duty, either primary or ultimate, of paying the land-owners."* Id. 200. On these and other similar provisions the decision was rested. Yet, in the face of these strong provisions of the statutes, showing that the acts in question were intended to be municipal and not state acts, and expressly imposing the liability on the city, those two able judges, of long service and ripe experience, EARL and RAPALLO, dissented, in a clear and cogent opinion, and held the work to be a state and not a municipal work, for which the corporation was not liable. Said Mr. Justice EARL in the case:

"The land was taken and appropriated by the direct act of the legislature, and, by the same act, the park commissioners were appointed to enter upon the land and make the improvement. They were not agents of the city, but state agents. They were not officers of the city, and, in what they did, they did not represent the city, and had no authority in any way to bind it, and could in no way make it responsible for these awards. They had the precise authority conferred upon them by the act, and no other; and the liability of the city for their acts, or for the land taken, or awards made, is not so much as hinted at by the act. For the position that the park commissioners were not agents of the city, for whose acts the city could be made responsible, the cases of *Maxmilian* v. *Mayor,* 62 N. Y. 160; *Tone* v. *Mayor,* 70 N. Y. 157; and *New York & Brooklyn Saw-mill & Lumber Co.* v. *City of Brooklyn,* 71 N. Y. 580, are abundant authority. The general rule, as deduced from these cases, is that a municipality is not liable for the acts or omissions of an officer in respect to a duty specifically imposed upon him which is not connected with his· duties *as agent of the corporation,* and that such a corporation is only liable for the acts or omissions of officers in the performance of duties *imposed upon the principal."* Id. 204.

But, conceding the case to be well decided, the court, in its decision, rested upon express provisions of the statute, making the city

of Brooklyn responsible, and the case now in hand is entirely different. There is no such provision in the Montgomery avenue act. That act is absolutely barren of any such or similar provisions.

The other cases apparently most confidently relied on to show the liability of the city are *Jordan* v. *Cass Co.* 3 Dill. 185, and *Davenport* v. *County of Dodge,* 105 U. S. 238. The bonds in the former case were issued by the county in the name of the county, by express direction of the statute. In the latter case the bonds were issued by the county commissioners, the governing body of the county, *in pursuance of an express provision of the statute,* for a precinct indebtedness. It was held by the supreme court, following the construction adopted by the supreme court of Nebraska, that the county was liable upon the bonds under the statute authorizing the issue of *county* bonds for the precinct indebtedness, but it was held that the indebtedness was to be satisfied out of funds collected from the precinct. In *Meath* v. *Phillips Co.* 108 U. S. 555, S. C. 2 Sup. Ct. Rep. 869, the supreme court, referring to this case and the case of *Cass Co.* v. *Johnson,* 95 U. S. 360, said:

"In the case of Cass county, the law provided in terms for an issue of bonds *in the name of the county;* and in that of the county of Davenport, we construed the *law to be, in effect, the same.* Consequently, there were, in those cases, *obligations of counties,* payable out of special funds."

These cases are therefore entirely different from the case under consideration. On the contrary, the case of *Meath* v. *Phillips Co.,* just cited, is decisive in favor of the proposition maintained in this opinion, that where the state, or some other district or organization, employs certain officers, designated by their official names, of a city or county, in pursuance of the statute, as agents or instrumentalities for accomplishing its own proper purposes, such officers, in performing the acts thus required, do not act as officers or agents of such city or county, but as agents or instrumentalities of the state, or other district or organization, for which the services required by the statutes are performed. 108 U. S. 554, 555; S. C. 2 Sup. Ct. Rep. 869.

It is clear to my mind, both upon principle and authority, that the city and county of San Francisco is not in substance, or in form, *an* obligor, on or party in any sense to, the bonds and coupons sued on; that under the Montgomery avenue act it could not have been legally made an obligor on or party to the bonds issued in pursuance of the act; and that, in its corporate capacity, it has no relation to those bonds, and no duties to perform in connection therewith. The duties to be performed, whatever they may be, in connection with the bonds and coupons in suit, by parties who are also officers of the city and county San Francisco, are, in my judgment, to be performed by them under the provisions of the statute, as agencies or instrumentalities of the state, and not as agents or officers of the city. It follows, necessarily, that the city and county of San Francisco, in its

corporate character, is in no respect chargeable with any liability of any kind upon the instruments sued on.

There being no liability of any kind, and no duty to perform by the municipality, in its corporate capacity, in relation to said instruments, no action or judgment can be rendered in the case that a::.l avail anything as a foundation for proceeding by *mandamus* to compel the assessment and collection of a fund for the payment of the coupons, and ultimate redemption of the obligations in question. For that, or any other purpose, looking to the collection of the money claimed to be due, the action might just as properly be brought against the city of Oakland as against the city and county of San Francisco.

The property holders of the district liable to be assessed, under the Montgomery avenue act, with respect to their lands, and the indebtedness in question, do not, under the act, stand, in any respect, in privity with the corporation,—the city and county of San Francisco, —and, in relation to the instruments in suit, the municipality does not represent either the owners or the lands. Any judgment against the city, in this action, could not bind or conclude the owners or their property, neither being, in any sense, parties or privies to parties to the suit. The judgment, under such circumstances, could not afford any valid or legal foundation for proceedings by *mandamus* against the parties charged with the duty of assessing and collecting the Montgomery avenue bond tax; for in that capacity they are not officers, agents, or instrumentalities of the municipal corporation; and they are not in privity with it. A *mandamus*, in the national courts, is in the nature of process to execute a valid judgment; and it must be against the judgment debtor or obligor, or some one representing the judgment debtor or obligor. A proceeding by *mandamus* against the parties charged with assessing and collecting the tax in question, based upon a judgment in this case, would be very much like proceeding by an execution against B., to satisfy a judgment against A., between whom there is no legal relation whatever, affected by or affecting the judgment.

If the views expressed are sound, the complaint presents no cause of action against defendant, and the facts alleged, and offered to be proved, are wholly immaterial. It would be but a waste of time to occupy the attention of the court in taking testimony which cannot prove, or tend to prove, any valid cause of action. The complaint is wholly insufficient, and the pleadings present no material issue. For the reasons stated in this opinion, and in the opinion of the presiding justice, in which I concur, the objection to the introduction of the evidence offered must be sustained.