CITY OF CHARLOTTE v. AMERICAN TRUST COMPANY.

(Filed 28 May, 1912.)

1. **Cities and Towns—Bond Issues—Street Improvements—Assess-
   ments—Direct Obligation.**

   A municipal bond providing that it shall constitute a general
   and direct obligation of the city, and, in addition thereto, is made
   chargeable to the property abutting upon certain streets laid out
   by ordinances passed by the board of aldermen as permanent im-
   provement districts or sections, is, upon its face, the direct obli-
   gation of the city, and the assessment specified an additional
   security to the bonds.

2. **Same—Enabling Statute.**

   A statute which gives to an incorporated town or city, which
   has authority to pave its streets as a necessary expense payable
   out of its general funds, the further authority to tax the cost
   of the paving against abutting property-owners, must be con-
   strued as enabling legislation, giving an additional source of
   revenue and additional security to the bonds.

3. **Cities and Towns—Bond Issues—"Bonds"—Words and Phrases—
   Direct Obligation.**

   When the word "bonds" is used in connection with municipal
   obligations, designating what is commonly called "municipal
   bonds," it denotes a negotiable bond, and *ex vi termini* it implies
   that the city is bound for their payment.

4. **Cities and Towns — Bond Issues — Direct Obligation — Assessments—Additional Security—Diversion of Funds.**

   When an act empowers a town to issue "street improvement bonds" in ten equal series, each consisting of a like number of bonds, bearing a fixed rate of interest, required to be attested by the mayor and the city clerk, payable to bearer, redeemable by the town at a specified time, and executed with all the formalities of a regular issue of bonds, a requirement that the bonds shall contain such recitals as may be necessary to make them chargeable to the property of the abutting owners of the streets improved will be construed to mean that the assessments of this property are to be devoted by the town to the payment of these particular bonds, and may not be diverted; but this does not affect the general obligation of the city to pay them.

5. **Cities and Towns—Bond Issues—Necessaries—Direct Vote—Constitutional Law—Interpretation of Statutes.**

   The Private Laws 1911, chap. 251, authorizing the city of Charlotte to issue certain particular bonds, does not provide that the issuance of the bonds be first submitted to the vote of its citizens, and *Ellison v. Williamston*, 152 N. C., 149, cited and distinguished.

6. **Same.**

   Chapter 251; Private Laws 1911, specifically authorizes the city of Charlotte to issue bonds for street improvements, and the bonds being for a necessary expense, are not inhibited by the provisions of Revisal, sec. 2977.

APPEAL from *Lyon, J.*, at Spring Term, 1912, of MECKLENBURG.

Controversy without action submitted to determine whether certain bonds contracted to be sold by plaintiff to the defendant are the obligations or bonds of the city of Charlotte and binding upon the municipality. His Honor adjudged the bonds to be the "general, personal, and direct obligation of the city of Charlotte," and rendered judgment against the purchaser, the defendant. A copy of the bond is set out in full in the record, and is marked "Exhibit B." The defendant excepted and appealed.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Brown.*

*Chase Brenizer, Tillett & Guthrie for plaintiff.*
*P. C. Whitlock for defendant.*

BROWN, J. The bond in question is one of a series issued pursuant to an act of the General Assembly ratified 3 March, 1911, and are denominated "street improvement bonds." Each bond contains this. clause: "This bond shall constitute a general, personal, and direct obligation of the city, and, in addition thereto, the payment thereof is chargeable to the 'property abutting upon certain streets which have been laid out by ordinances passed by the board of aldermen as permanent improvement districts or sections, and are as follows:" Here follows a list of assessments.

It is too plain for discussion that upon their face the bonds are the direct obligation of the city of Charlotte, and that the assessments specified on the face of the bond are but additional security for their payment.

But it is contended that they are issued as such in violation of the terms of the statute, and are therefore *ultra vires.* It is agreed that they are issued pursuant to the terms of an act entitled "An act to amend the charter of the city of Charlotte," ratified on 3 March, 1911, being chapter 251 of the Private Laws of 1911.

The plaintiff, prior to this act, had the right to pave its streets as a necessary expense, and to pay for the same out of its general funds. *Tucker v. Raleigh,* 75 N. C., 267; *Hightower v. Raleigh,* 150 N. C., 569.

We think the act of 3 March, 1911, did not intend to curtail the power and means of the city to pave its streets, but to increase them.

Inasmuch as prior to these special acts the plaintiff had the right to contract debts for paving its streets and to make the obligations issued for such purpose a part of its general and direct indebtedness, these special acts giving it power to tax the cost of paving against abutting property-owners must be construed as enabling legislation intended to enlarge the ability of the city to pave its streets by giving an additional source of revenue, and, furthermore, to render the bonds more salable by giving the bondholder a specific charge and lien against the abutting property-owners in addition to the general obligation of the city. The Legislature could not have intended to authorize an unsalable security.

The bonds are required to be sold at not less than par, and such an obligation could not be sold at par unless it constitutes the direct debt of a solvent obligor. As *Mr. Justice Harlan* very forcibly says, in a case on all-fours with this, *U. S. v. Fort Scott,* 99 U. S., 152: "Experience informs us that the city would have met with serious, if not insuperable, obstacles in its negotiations had the bonds upon their face, in unmistakable terms, declared that the purchaser had no security beyond the assessments upon the particular property improved."

The act directs the board of aldermen to issue bonds of the city and sell them. The use of the word bond *ex vi termini* implies that the city is bound. As said by the United States Supreme Court in *Davenport v. County of Didge,* 105 U. S., 237 (26 :1018), a *"bond implies an obligor bound to do what is agreed shall be done."*

Also, in *Morrison v. Township of Bernards,* 25 N. J. Law, 219, *Chief Justice Beasley,* speaking of the force and effect of a direction in the statute that the township issue "bonds," says: "A similar implication, but one of greater force, arises from the direction that bonds are to be given under the hands and seals of the commissioners, for an instrument of that kind cannot be created without the presence of an obligor; and, indeed, it seems like a solicism to say that the statute calls for the making of a bond, but that nobody is to be bound by it."

Not only that, but it is also held by the authorities that when the word "bond" is used in connection with municipal obligations, designating what is commonly called "municipal bonds," then this means negotiable bonds. This is expressly held in the case of *Nalle v. City of Austin,* 22 S. W., 668. See, also, *McCless v. Meekins,* 117 N. C., 34; *City of Charlotte v. Shepard,* 122 N. C., 602.

These bonds, called "street improvement bonds" in section 12 of the act authorizing their issue, are specifically named such in that act; they are to be issued in ten equal series and each series shall consist of a like number of bonds; they bear interest at 6 per cent, fixed by the statute, and they are required to be signed by the mayor and attested by the city clerk. Thus it is seen that they possess all of the characteristics of a

municipal bond, being payable to bearer, redeemable by the
city at a stipulated time, and executed with all the formality
of regular bonds by its chief officers.

It is true that the statute requires that the bonds shall con-
tain such recitals as may be necessary to show that they are
chargeable to particular property. We construe this to mean
that these assessments are to be devoted by the city to the pay-
ment of these particular bonds, and it would be a violation of
law to divert the proceeds arising from such assessment to any
other purpose. The fact that these assessments are dedicated
to the specific purpose of paying these bonds does not render the
bonds any the less the general obligation of the city.

It is also said that these bonds were not submitted to a vote
of the people. In our opinion that was not necessary. There
are classes of bonds other than these mentioned in this act of
1911 which are required to be submitted to a vote of the quali-
fied voters, but there is no such provision or requirement in
regard to these street improvement bonds secured by the assess-
ment. On the contrary, the board is invested with power to
issue these bonds without any vote of the people.

We are advertent to the previous decisions of this Court that
where the General Assembly specifically requires a proposition
to incur an indebtedness, or issue bonds for a given purpose, to
be submitted to the qualified voters for their approval, this, as
said by *Mr. Justice Hoke,* "will amount to a statutory restric-
tion, and such indebtedness shall not be incurred unless the
measure has been sanctioned and approved by the voters accord-
ing to the provisions of the statute; and this though such indebt-
edness is properly classed as necessary expense." *Ellison v.
Williamston,* 152 N. C., 149. Inasmuch as the statute does not
require this particular issue of bonds to be submitted to the
qualified voters, the principle announced in that decision has
no application here.

Neither do we think this issue of bonds comes within the in-
hibition contained in Revisal, sec. 2977, as they are issued for
a necessary expense, and specifically authorized by special legis-
lation. *Wharton v. Greensboro,* 146 N. C., 357.

The judgment of the Superior Court is
Affirmed.