R. B. CARAVAN v. THE BOARD OF DRAINAGE COMMISSION-ERS OF MATTAMUSKEET DRAINAGE DISTRICT.

(Filed 14 December, 1912.)

1. **Drainage Districts — Bonds—Landowners' Liability—Interpretation of Statutes—Notice.**

The bonds issued for the Mattamuskeet Drainage District referring to the acts under which they were issued and to the deed of Board of Education to the Southern Land Reclamation Company, and the deed securing these bonds referring to these acts and to the special proceedings under which they were formed, affect the bondholders with notice of the statute and deed in question; and it appearing on the face of the bonds that they are payable three-fourths of the principal and interest out of the lands levied on the reclamation company described in its deed, and one-fourth thereof out of assessments upon all the other lands "in the manner provided by law," it is *Held,* this amounts to a contract stipulation, affecting and binding

upon the holder of each bond, that the obligation shall not constitute a general and pecuniary indebtedness of the district, but payable only out of the assessments as provided for by the law, and that the individual owners of the land who were originally such, and the transferees holding their title, shall never in any event be assessed for more than one-fourth of such liability.

## 2. Same—Statutes—General Clauses.

A subsequent clause appearing on the face of bonds issued by the Mattamuskeet Drainage District, that "for the prompt payment of this bond, etc., the full faith, credit, and revenues of the said district are hereby irrevocably pledged," is construed by the general terms used, as subordinate to and controlled by the specific stipulation in the preceding clause, confining liability of the individual owner to "one-fourth of the obligation as to each bond."

APPEAL from order of *Lane, J.,* heard at chambers, 19 September, 1912, from HYDE.

Civil action to enjoin the issuance of certain drainage bonds by the Mattamuskeet Drainage District, heard on return to preliminary restraining order before his Honor, *Henry P. Lane;* judge holding the courts of the First Judicial District, at chambers in Elizabeth City on · 19 September, 1912. There was judgment dissolving the restraining order, and plaintiffs excepted and appealed, assigning for error that in the proposed bond issue the individual owners of land within the district were not sufficiently protected in the matter of restricting their obli-. gations in any event to one-fourth of the amount of the bonds, as required by law and the proceedings and deeds under which the bond issue was to be made.

*I. M. Meekins and M. H. Tillett for plaintiff.*
*Mann & Jones for defendant.*

HOKE, J. The validity of this proposed bond issue has been expressly declared in *Carter v. Commissioners,* 156 N. C., 183, and many of the facts relevant to such issue will be found stated in that well-considered case. The present suit is brought by one of the individual owners of land within the drainage district, the plaintiff contending, as we understand his position, that the rights of these owners are not sufficiently protected and

their liability properly restricted to one-fourth of the obligation represented by this bonded indebtedness, as provided by the law and proceedings applicable to the subject. After giving the matter most careful consideration, we are of the opinion that this apprehension is not well founded. The form of the proposed bond, made an exhibit in the record, expressly refers to the statutes under which they were issued, to wit, chapter 442, Laws of 1909, and chapter 509, Laws of 1909, and all acts amendatory thereof, and also to the deed by which the board of education, holding the interest of the State in the lands affected, have passed such interest to the Southern Land Reclamation Company, the corporate owner of a large portion of the lands, supposed to be at least three-fourths in value. These acts give clear indication that only one-fourth of the cost may be charged against the individual landowners, and the deed in question makes reference to these acts and to the special proceedings under which the drainage district was formed, and further provides in specific terms that the grantee, the Southern Land and Reclamation Company, its successors and assigns, is to pay three-fourths of the cost of construction and maintenance of the enterprise. This special proceeding is based on the proposition that the liability of the individual owners shall be not more than one-fourth of the costs, as shown from the following excerpt from the petition: "It is understood, and your petitioners join in this petition with this condition attached, that the cost of the proposed improvement to the landowners in said proposed district, other than the State Board of Education, shall not exceed $100,000 for preliminary work of completing the drainage of said lake and district."

These references would affect the bondholder with notice of the contents of the statutes and deeds in question. *Claybrook v. Commissioners,* 114 N. C., 453, and authorities cited; and in addition there appears upon the face of the bond the following: "The principal and interest of this bond are payable as follows, and not otherwise, to wit: Three-fourths of the principal and interest hereof are payable out of assessments levied on the lands of the Southern Land Reclamation Company described in a deed to it from the State Board of Education of the State

CARAVAN *v.* COMMISSIONERS.

of North Carolina, dated 14 January, 1911, and one-fourth of the principal and interest of this bond is payable out of assessments upon all the other lands in the said drainage district in the manner provided by law." In the absence of any inhibitive or qualifying provision in the Constitution or statutes affecting the question, this amounts to a contract stipulation affecting and binding upon the holder of each and every bond, that the obligation thereby incurred shall not constitute a general and pecuniary indebtedness of the district, but is payable only out of assessments as provided for by the law, and that the individual owners of the land who were originally such, and the transferees holding their title, shall never in any event be assessed for more than one-fourth of such liability. *Claybrook v. Commissioners, supra; Meyer v. City and County of San Francisco,* 150 Cal., 131; *Morrison v. Morey,* 146 Mo., 567; *Hogan v. Commissioners Court,* 160 Ala., 544, and notes to this case in 37 L. R. A., N. S., pp. 1072-1073; *Liebman v. San Francisco,* 24 Fed., 705; 21 A. and E. (2d Ed.), pp. 41-65.

There is nothing in *Charlotte v. Trust Co.,* 159 N. C., 388 (reported in 74 S. E., p. 1054), that in any way militates against this position. In that well-considered case there was not only nothing to restrict payment to the assessments imposed pursuant to law, but the bonds issued by a municipality having full power to create the indebtedness contained express stipulation that they should constitute a "general personal and direct obligation of the city," in addition to being a charge on the property of abutting owners. Our conclusion is in no way affected by reason of a subsequent clause appearing on the face of each bond as follows: "For the prompt payment of this bond and for the prompt and faithful performance of all covenants and conditions hereof the full faith, credit, and revenues of the said district are hereby irrevocably pledged." Such provision, expressed in these general terms, must be construed as subordinate to and controlled by the specific stipulation confining liability of the individual owner to "one-fourth of the obligation as to each bond."

There is no error, and the judgment of the lower court is
Affirmed.